# In The United States Court of Federal Claims

No. 02-879T

(Filed: October 19, 2005)

| | | |
|---|---|---|
| FLEETBOSTON FINANCIAL CORPORATION, | * | Tax refund suit; Cross-motions for summary |
| | * | judgment; Credit elect under section |
| | * | 6402(b) of the Code; Interest on |
| Plaintiff, | * | subsequently-determined deficiency; |
| | * | Net operating losses; Time credit-elect is |
| v. | * | considered payment under sections 6402(b) |
| | * | and 6513(d) of the Code; "Use of money" |
| THE UNITED STATES, | * | concept; *Seeley* and *Koppers*; *Avon* |
| | * | *Products*; *May Department Stores*; *Marsh &* |
| Defendant. | * | *McLellan*; Recovery denied. |

## OPINION

*John S. Brown*, Bingham, Dana & Gould, Boston, Massachusetts, for plaintiff.

*William Charles Rapp*, Tax Division, United States Department of Justice, Washington, D.C., with whom was *Assistant Attorney General Eileen O'Connor*, for defendant.

**ALLEGRA, Judge:**

"*Neither a borrower nor lender be . . .*"[1]

Under the Internal Revenue Code, it is difficult for a large corporate taxpayer to follow the sage advice given by Polonius to his son, Laertes. That is, in part, because, although the income tax system is often identified with its annual accounting principle, various statutory exceptions thereto allow certain deductions and tax payments to be shifted from one tax year to another, causing the tax accounts of many taxpayers to vacillate between debit and credit status.

One such provision, section 6402(b) of the Internal Revenue Code, permits a corporate taxpayer to credit overpayments of tax for one year against its tax liability for the succeeding year. *See* 26 U.S.C. § 6402(b); *Avon Products Inc. v. United States*, 588 F.2d 342 (2d Cir. 1978). Fleetboston Financial Corporation (Fleetboston), the plaintiff herein, elected to apply certain overpayments in this fashion, but a subsequent audit revealed that it had taken credits for years in which it actually had underpaid its taxes. Nonetheless, these deficiencies were erased by application of yet another provision of the Code, section 172(b)(1), which allowed net operating

[1] William Shakespeare, Hamlet (I, ii).

losses to be carried back to the years *sub judice*. If things were not complicated enough, in the same period, plaintiff had overpaid its estimated taxes, so that for at least parts of these years, the Internal Revenue Service (IRS) held more funds from plaintiff than to which it was eventually entitled. Out of this shifting labyrinth of mutual indebtedness comes, in the fashion of cross-motions for summary judgment, a question regarding plaintiff's liability for interest on the aforementioned deficiencies.

## I. FACTS

Neither party disputes the essential facts, which have been stipulated as follows:

In September of 1985, plaintiff, FleetBoston Financial Corporation (operating as its predecessor, BankBoston), filed its corporate income tax return for tax year 1984, reporting a tax liability of $14,434,055 and payments of $15,100,000, resulting in a claimed overpayment of $665,945. On its 1984 tax return, plaintiff elected under section 6402(b) of the Code[2] to apply its overpayments to its estimated tax liabilities for tax year 1985 ("1984 credit elect"). In choosing to apply its overpayment in this fashion, plaintiff surrendered its claim to interest on the overpaid taxes. Treas. Reg. § 301.6611-1(h)(2)(vii). On September 15, 1986, plaintiff filed its corporate tax return for tax year 1985, reporting a liability of $31,469,082 and payments of $33,765,945 (including its 1984 credit elect of $665,945), resulting in a claimed overpayment of $2,296,863. On its 1985 tax return, plaintiff elected to apply its claimed overpayments to its estimated tax liabilities for tax year 1986 ("1985 credit elect"). On September 11, 1987, plaintiff filed a return for tax year 1986, reporting a liability of $21,120,858 and payments of $42,600,000 (including its 1985 credit elect of $2,296,863), resulting in a claimed overpayment of $21,479,142. Of the $21,479,142 in claimed overpayments, plaintiff elected to take a refund of $18,067,818 and to apply $3,411,324 to its 1987 tax liabilities ("1986 credit elect").

The IRS later audited plaintiff and assessed deficiencies for several years in which plaintiff had claimed overpayments and refunds, including tax years 1984 and 1985. It determined that, for tax year 1984, plaintiff's correct tax liability was not the reported

---

[2] Unless otherwise noted, all section references herein are to the Internal Revenue Codes of 1954 and 1986 (26 U.S.C.), as in effect for the tax years in question. Section 6402(b) of the Code provides:

> The Secretary is authorized to prescribe regulations providing for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the Secretary to be an overpayment of the income tax for a preceding taxable year.

Such a credit generally is referred to as a "credit elect overpayment" or simply a "credit elect." *See Marsh & McLennan Cos., Inc. v. United States*, 302 F.3d 1369, 1371 (Fed. Cir. 2002), *cert. denied*, 538 U.S. 925 (2003).

$14,400,000, but $48,800,000, and that for tax year 1985, plaintiff's correct tax liability was not the reported $31,500,000, but $62,400,000. These adjustments resulted in substantial deficiencies for those and other tax years. Nonetheless, those deficiencies were later wiped out by net operating loss carrybacks from 1990 (for the 1984 deficiency) and from 1987 and 1990 (for the 1985 deficiency). Plaintiff disputed the assessment of the deficiencies and filed a petition for redetermination in the United States Tax Court.

On October 24, 1997, the parties filed a stipulation in Tax Court in which they disposed of all the years involved in the Tax Court litigation, including the years at issue here – 1984 and 1985. On October 27, 1997, the Tax Court entered a decision ruling, *inter alia*, that plaintiff had overpayments for its tax years 1984 and 1985, in the amounts of $2,561,831 and $1,842,052, respectively.

On January 5, 1998, the IRS assessed plaintiff deficiency interest with respect to the underpayments of tax for tax years 1984 and 1985, calculating the interest for the period ending with the elimination of the deficiencies by the net operating loss carrybacks in 1990. In originally calculating the deficiency interest on $665,945 of the deficiency for tax year 1984 – the amount of the 1984 credit elect – the IRS used a start date of March 15, 1985. In originally calculating the deficiency interest on $2,296,863 of the deficiency for tax year 1985 – the amount of the 1985 credit elect – the IRS used a start date of March 15, 1986. Plaintiff disputed these interest calculations, which were then abated, in part – among the adjustments made was postponing the commencement of underpayment interest to March 15, 1986 and March 15, 1987, as to the amounts of the 1984 and 1985 credit elects, respectively. Refunds of resulting overpayments of deficiency interest were paid to plaintiff in November, 2001. Plaintiff's claims for the amounts at issue in this litigation, however, were denied by the IRS in a letter dated February 26, 2002. Plaintiff filed this tax refund action on July 23, 2002, seeking redress for the alleged overpayments of interest of $24,973,157 for its tax year 1984 and of $1,089,013 for its tax year 1985. On December 15, 2004, this case was reassigned to the undersigned judge.

## I. DISCUSSION

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). As noted, the facts material to the motions are essentially undisputed. Based on those facts, the court concludes, as a matter of law, that defendant is entitled to summary judgment.

### A. Statutory and Regulatory Framework

By way of prologue, as with any issue involving a question of statutory construction, the starting point in determining the interest owed here must be the language and structure of the relevant statutes. *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989); *see also Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990); *Reese v. United States*, 24 F.3d 228, 230 (Fed. Cir. 1994). In fact, determining the interest owed to or by a given

taxpayer, relating to payments made with respect to its federal tax obligations, is governed by a set of several interrelated Code provisions.

Initially, the calculation of interest depends upon when a tax payment was due. Under section 6072(b) of the Code, corporate income tax returns are due on the fifteenth day of the third month following the close of the fiscal year. The last date prescribed for the payment of tax is the due date for the tax return on which the tax is reported, without regard to any extensions for the filing of the return. *See* 26 U.S.C. § 6601(b); Treas. Reg. § 1.6081-3. Pursuant to section 6601(a) of the Code, the IRS is authorized to assess interest on any tax that "is not paid on or before the last date prescribed for payment." *See also* Treas. Reg. § 301.6601-1(a). Thus, "if a tax return shows an underpayment, the IRS may assess interest from the original due date of the return." *May Dept. Stores Co. & Subsidiaries v. United States*, 36 Fed. Cl. 680, 683 (1996); *see also* Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts ¶ 114.1 (2005).

Section 6601(f) of the Code provides for the suspension of interest on an underpayment in certain circumstances. That statute provides that: "[if] any portion of a tax is satisfied by credit of an overpayment, then no interest shall be imposed under this section on the portion of the tax so satisfied for any period during which, if the credit had not been made, interest would have been allowable with respect to such overpayment." 26 U.S.C. § 6601(f). Thus, if an outstanding underpayment is satisfied by the credit an overpayment, no interest shall accrue on the underpayment for any period during which interest would have accrued on the overpayment if it had been refunded to the taxpayer, rather than credited. *See Northern States Power Co. v. United States*, 73 F.3d 764, 766 (8th Cir.), *cert. denied*, 519 U.S. 862 (1996); Rev. Proc. 60-17, 1960-2 C.B. 942. Section 6601(f) often interacts with section 6402(a) of the Code, which indicates that, "[i]n the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment . . . against any liability." *See also* Treas. Reg. § 301.6402-1 ("[t]he Commissioner . . . may credit any overpayment of tax, including interest thereon, against any outstanding liability . . . owed by the person making the overpayment"); *Northern States*, 73 F.3d at 766 (discussing the interaction between section 6601(f) and 6402(a)); *Texas Eastern Corp. v. United States*, 907 F.2d 138, 141 (Fed. Cir. 1990) (same).

Under section 6402(b) of the Code, a taxpayer may elect to credit to its estimated tax any overpayment of income tax from a preceding tax year. That section authorizes the IRS to prescribe regulations to provide "for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the Secretary to be an overpayment of the income tax for a preceding tax year." 26 U.S.C. § 6402(b). Pursuant to Treas. Reg. § 301.6402-3(a)(5), the taxpayer may specify in its return the amount of an overpayment that –

> shall be applied as a credit against the taxpayer's estimated income tax for the taxable year immediately succeeding the taxable year for which such return . . . is filed. If the taxpayer indicates on its return . . . that all or part of the overpayment shown . . . is to be applied to its estimated income tax for its succeeding taxable

> year, such indication shall constitute an election to so apply such overpayment and no interest shall be allowed on such portion of the overpayment credited and such amount shall be applied as a payment on account of the estimated income tax for such year or the installments thereof.

Regarding section 6402(b), section 6513(d) of the Code further provides that – "[i]f any overpayment of income tax is . . . claimed as a credit against estimated tax for the succeeding taxable year, such amount shall be considered as payment of the income tax for the succeeding taxable year . . . and no claim for credit or refund of such overpayment shall be allowed for the taxable year in which the overpayment arises." 26 U.S.C. § 6513(d). Amplifying this point, Treas. Reg. § 301.6513-1(d) states that "[if] the treatment of such amount as payment of income tax for the succeeding taxable year results in an overpayment for such succeeding taxable year, the period of limitations applicable to such overpayment is determined by reference to that taxable year." *See also* 15 John Mertens, Mertens Law of Federal Income Taxation §58:85 (2005).

Finally, it is worth noting the interest rules applicable to net operating loss carrybacks, that is, losses which, under section 172 of the Code, may be carried back as a deduction to offset taxable income in earlier tax years. Under section 6601(d)(1) of the Code, interest on that part of an underpayment that is reduced by the application of a carryback of a net operating loss incurred in a later year is payable up to the filing date for the tax year in which the net operating loss arises. Section 6601(d)(4) of the Code provides that, for this purpose, the filing date for the tax year is the last date prescribed for filing the income tax return for the tax year, determined without reference to extensions. Under these provisions, while a net operating loss carryback may eliminate a deficiency attributable to a particular tax year, it does not eliminate the interest that accrued prior to the due date for the return in which the net operating loss arises. *See also* Treas. Reg. § 301.6601-1(e).

### B. Credit Elects and the Treatment of Interest on a Deficiency

At center stage of the current dispute is the IRS' calculation of the period of deficiency interest, as impacted by the credit-elects for tax years 1984 and 1985. In calculating the interest owed on these deficiencies, the IRS used, as a start date, March 15, 1986, and March 15, 1987, corresponding, respectively, to the due date for the payment of plaintiff's corporate taxes with respect to 1985 and 1986. In defendant's view, the 1984 credit elect was used to pay plaintiff's taxes on the former date, while the 1985 credit elect was so used on the latter date. Plaintiff, however, contends that in computing the deficiency interest relating to the 1984 and 1985 credit elects, the IRS should have used a start date sometime in 1990, corresponding to when the overpayment originally generated by the credit elects was refunded. It thus asseverates that it should owe little or no interest on the 1984 and 1985 deficiencies because, during the period those deficiencies remained unpaid, the government was holding monies corresponding to estimated tax payments made by plaintiff in excess of its actual tax liability.

Lurking beneath these contentions is a fundamental disagreement as to when the credit elects in question were used – either as part payment of plaintiff's tax liability or, ultimately, as the basis for a refund. While plaintiff suggests, in various ways, that those credit elects remained pending until its refunds were processed in 1990, the controlling statutes and regulations suggest otherwise. Both sections 6402(b) and 6513(d) of the Code provide that a credit elect is applied against a given taxpayer's liability in the immediately succeeding tax year, and ***only*** in that year. Accordingly, at the latest, the 1984 credit elect was applied to plaintiff's tax liability for 1985 on March 15, 1986, when its tax return and taxes for 1985 was due. Likewise, at the latest, the 1985 credit elect was applied to plaintiff's tax liability for 1986 on March 15, 1987, when its tax return and taxes for the 1986 was due. This construction of sections 6402(b) and 6513(d) is supported by the underlying regulations, which treat the credit as a payment of tax in the succeeding year for various purposes, including the application of relevant statutes of limitations. *See* Treas. Reg. § 301.6513-1(d). And, it holds true even though plaintiff may have paid enough in 1985 and 1986, so that the credit elects were unnecessary to balance its tax accounts for those years. Rather, in accordance with the relevant statutes and regulations, the credit elects were used entirely in the respective tax years immediately succeeding their creation, and any overpayments that resulted from plaintiff's other payments were then available either to be credited to the next succeeding tax year or for refund.[3] *See* Alan J. Tarr, 581-1st (BNA) Tax Mgmt. P. *Estimated Tax* II. C. 6. (2005) (hereinafter "Tarr") ("if an entire credit elect is not needed to pay estimated taxes, it is deemed a payment of income taxes for the subsequent year as of the unextended due date for that year's return; the original year's deficiency corresponding to the amount of the unused credit elect starts running interest as of the unextended due date of the subsequent year's income tax return").

This construction of the controlling statutes and regulations is supported by a chorus of cases. The choragus among these is *Owens-Corning Fiberglas Corp. v. United States*, 462 F.2d 1139 (Ct. Cl. 1972), where the court rejected a corporate taxpayer's claim for interest on an overpayment of estimated tax that a taxpayer elected to have credited. In sustaining the Treasury Regulations disallowing such interest, the Court of Claims discussed the history of section

---

[3] To illustrate the difference between plaintiff's approach and that dictated by the Code, suppose that under section 6402(b), a corporate taxpayer elects to credit an overpayment of $100 for its 1984 tax year. In 1985, it has a tax liability of $1,000 and makes estimated tax payments of $1,100. Under section 6402(b) and 6513(d), as well as the regulations thereunder, the taxpayer's $100 credit elect is treated as a payment for its 1985 tax year, even though the credit elect is not needed to pay the taxpayer's full tax liability for that year. The 1984 credit elect is applied to the 1985 taxes as of the due date for the taxpayer's 1985 return and ceases to exist as of that date. The taxpayer then has an overpayment of $200 for 1985 (the $100 1984 credit elect plus the $1,100 in 1985 estimated tax payments minus the $1,000 liability), that it may either elect to credit to its 1986 taxes or, in appropriate circumstances, to seek a refund. Even if the taxpayer chooses to credit the 1985 overpayment to its 1986 taxes, the original 1984 credit elect is dissipated and a new credit elect, subject to the Code's interest rules and limitations periods, springs into life for 1985.

6402(b), noting that it was first enacted as part of the Current Tax Payment Act of 1943, 57 Stat. 126. The court observed that, pursuant to the authorization contained in that section, the Secretary issued regulations in 1944, now found at Treas. Reg. § 301.6402-3(b), making clear that a credit elect was to be applied to the taxpayer's estimated tax for its "succeeding taxable year." *Owens-Corning*, 462 F.2d at 1140 (*quoting* T.D. 5333, 1944 C.B. 358). "Section 6513(d), enacted in 1954, adopts this treatment of the overpayment of taxes as a payment of current installment," the court concluded, finding that "[p]laintiff, in electing to apply the overpayment against its estimated tax liability for the succeeding year, . . . had agreed to this treatment of the overpayment ***as a payment***." 462 F.2d at 1141 (emphasis in original). Based upon this construction of the statutes, the court upheld the validity of the regulation denying interest on a credit elect, finding that the regulation did not violate the general notion that a taxpayer should receive interest on an overpayment because after the credit elect was applied to the taxpayer's current liabilities, the IRS was no longer viewed "as holding funds that are taxpayer's." *Id.*[4]; *see also Martin Marietta Corp. v. United States*, 572 F.2d 839, 841-42 (Ct. Cl. 1978) (under sections 6402 and 6513(d), amount credited to taxpayer's 1969 estimated tax liability "was no longer an overpayment of 1968 income taxes").

Like *Owens-Corning*, quite a few cases have construed the relevant statutes and regulations as requiring a credit elect to be treated as a payment for the immediately succeeding tax year. Some of these involve the calculation of interest or whether the credit elect is available in a later year as a refund.[5] Others consider the availability of credit elects in resolving the

---

[4] In so concluding, the court noted that a taxpayer electing to credit an overpayment to its succeeding-year tax liability received benefits it would not have received had it chosen instead to obtain a refund of such taxes:

> Plaintiff argues that if a refund had been elected in this case interest would have been paid. Yet, on the same day plaintiff would be required to pay an installment on the current year's estimated income tax. Since 1966, Section 6611(e) [of the Code] denies interest on amounts refunded for a period of 45 days from the filing date. In such case, the Government would have both funds and plaintiff would lose interest for that period. By choosing to credit the overpayment to current tax liabilities, plaintiff retained funds it otherwise would not have had use of for 45 days.

462 F.2d at 1141.

[5] *See Georges v. U.S. Internal Revenue Service*, 916 F.2d 1520, 1521 (11th Cir. 1990) (1985 credit elect treated as payment of 1986 estimated taxes and not later available as a refund); *First Sec. Bank of Idaho v. Comm'r*, 592 F.2d 1046, 1048 (9th Cir. 1979) (overpayment could not be carried back to prior tax years; under relevant sections, "such an estimated tax payment must be treated as a payment in the ***succeeding*** year" (emphasis supplied)); *Stephenson v. Comm'r*, 69 T.C.M. (CCH) 1735 (1995); *see also Starr v. Comm'r*, 267 F.2d 148, 151 (7th Cir. 1959) (construing the analogous provisions of the 1939 Code).

timeliness of various refund requests under the limitations imposed by section 6511 of the Code.[6] And still others construe sections 6402(b) and 6513(d) in the bankruptcy contest, holding that, unlike a refund, a credit elect is not property of the bankruptcy estate available for the payment of creditors.[7] Summarizing these cases, one commentator has stated that "a taxpayer may elect to have all or a portion of the overpayment shown on his timely filed original or amended income tax return applied as a credit against his estimated income tax for the taxable year immediately succeeding the year for which such return was filed," but that "[t]he overpayment cannot be applied as an estimated tax payment for any other year." Tarr, *supra,* at II.C.6.

As such, there is a fundamental flaw in the predicate upon which much of plaintiff's argument is founded. Contrary to its claims, the IRS did not possess the funds corresponding to the 1984 and 1985 credit elects until 1990. Rather, under sections 6402(b) and 6513(d) of the Code, those credits were used to pay plaintiff's taxes for the respective succeeding taxable years. While under Treas. Reg. § 301.6402-3(b)(5), no statutory interest under section 6611(a) was allowable on the amount of the overpayment so credited, for reasons that will be described in greater detail below, the IRS, nonetheless, effectively reduced the amount of interest assessed on plaintiff's 1984 and 1985 deficiencies by lessening those deficiencies by the amount of the credit elects until such time as they were applied to plaintiff's succeeding year liabilities. As of that time, the amount of plaintiff's 1984 and 1985 taxes that were due and unpaid increased by the amount of the credit elects, triggering the imposition of additional interest under section 6601(a). None of plaintiff's subsequent tax payments altered that fact; indeed, it appears that, in the main,

---

[6] Under section 6511(a) of the Code, if a taxpayer has filed a valid return, the taxpayer's claim for refund must be filed "within three years from the time the return is filed or two years from the time the tax was paid, whichever of such periods expires later." Various cases applying this "look-back" provision have construed sections 6402(b) and 6513(d) as treating a credit elect as being paid in the taxpayer's succeeding taxable year, with one court commenting that such credit elects "lose their character as overpayments for the years in which they arose and become tax payments for the succeeding year." *Fisher v. United States*, 61 F. Supp. 2d 621, 623 (E.D. Mich. 1999); s*ee also, e.g., Harrigill v. United States*, 410 F.3d 786, 791 (5th Cir. 2005); *Danoff v. United States*, 324 F. Supp. 2d 1086, 1093 (C.D. Cal. 2004); *Gouin v. United States*, 88-2 USTC ¶ 9534, 1988 WL 126566 (D. Mass. 1988); *In Matter of Sims*, 91-2 USTC ¶ 50,510, 1991 WL 253017 (Bankr. E.D. La. 1991).

[7] Under the Bankruptcy Code, the "property of the estate" must be delivered to the bankruptcy trustee for disposition under the payment and priority rules of that code. 11 U.S.C. § 541(a)(1). Applying sections 6402(b) and 6513(d) of the Code, various courts have concluded that credit elects are not property of the estate because, once the election is made, they are treated as payments of taxes for the succeeding tax year and are no longer available. *See In re Metcalf*, 2001 WL 1203344 at *2 (N.D. Tex. 2001); *In re Block*, 141 B.R. 609, 610-11 (Bankr. N.D. Tex. 1992) ("Once they made the election, they no longer had an overpayment for which they could file a claim for refund; the overpayment became an advance payment of the Block's 1989 taxes"); *In re Simmons*, 124 B.R. 606, 607 (Bankr. M.D. Fla. 1991) (same).

such payments were estimated tax payments that themselves bear no interest under the Code. *See* sections 6513(b), 6611(d) of the Code. While seeking to alter this result, plaintiff can point to no provision of the Code that explicitly supports its position. Instead, it loosely claims, under section 6601, that during the entire period in question, the IRS had use of its funds and thus should not have imposed interest on the deficiencies under the so-called "use of money" concept that, plaintiff asserts, underlies the interest provisions of the Code.

While plaintiff identifies this "use of money" concept with the Second Circuit's decision in *Avon Products*, *supra*, that concept, such as it is, more often is traced to the Supreme Court's decision in *Manning v. Seeley Tube and Box Co.*, 338 U.S. 561 (1950). *See Martin-Marietta Corp. v. United States*, 418 F.2d 502, 508 (Ct. Cl. 1969). At issue in *Seeley Tube* was whether interest on a properly assessed tax deficiency should be abated when the deficiency itself was extinguished by the carryback of a net operating loss sustained in a subsequent year. In holding that the taxpayer was not entitled to a refund of the assessed interest, the Supreme Court interpreted section 292(c) of the 1939 Code, the precursor to section 6601 of the current Code, at one point stating –

> The subsequent cancellation of the duty to pay this assessed deficiency does not cancel in like manner the duty to pay the interest on that deficiency. From the date the original return was to be filed until the date the deficiency was actually assessed, the taxpayer had a positive obligation to the United States: a duty to pay its tax. For that period the taxpayer, by its failure to pay the taxes owed, had the use of funds which rightfully should have been in the possession of the United States. The fact that the statute permits the taxpayer subsequently to avoid the payment of that debt in no way indicates that the taxpayer is to derive the benefits of the funds for the intervening period. In the absence of a clear legislative expression to the contrary, the question of who properly should possess the right of use of the money owed the government for the period it is owed must be answered in favor of the government.

338 U.S. at 565-56. Parenthetically, the result reached by the Court was later codified in section 6601(d)(1) of the Code. Five years after this decision, the Supreme Court made similar comments in *United States v. Koppers* Co., 348 U.S. 254, 267 (1955), in which it held that the abatement of Federal excess profits taxes relieved the taxpayers from the payment of interest on deficiencies of such taxes from the time of the assessment, rather than the original due date of the taxes abated. *See also Fluor Corp. and Affiliates v. United States*, 126 F.3d 1397, 1400 (Fed. Cir.), *reh'g granted*, 132 F.3d 700 (Fed. Cir. 1997), *cert. denied*, 522 U.S. 1118 (1998).

*Seeley Tube* and *Koppers* have been read, at times and in varying degrees, as establishing a "use of money" principle to be employed in applying the various interest provisions of the Code, *i.e.,* that, as between the government and a taxpayer, interest generally should be imposed upon the one who has the use of the other's funds. *Avon Products, supra*, which involved an interpretation of section 6601 of the Code, is most often cited for this proposition, even though it does not mention, at least in so many words, the "use of money" principle. In that case, the

Second Circuit held that interest on a deficiency began to run on the date that the liability became unpaid. It construed section 6601 as imposing interest "when a tax becomes both due and unpaid," *Avon Products*, 588 F.2d at 344, finding this construction to be supported by what has since been viewed as a corollary to the "use of money" principle, *to wit*, that interest "is intended only to compensate the Government for delay in payment of a tax." *Id*. at 343. Later, in *May Department Stores Co. v. United States*, 36 Fed. Cl. 680 (1996), this court reaffirmed that underpayment interest may be imposed only for the period during which a tax is both due and unpaid, holding that when an overpayment is credited from one year to the next year's estimated tax, interest on a subsequent deficiency should run from the date the credit is effective against the estimated tax. *Id*. at 689. It held that "consistent with the 'use of money' principle followed in both *Manning* and *Avon Products*, interest on deficiencies may be charged to compensate the government for funds which it did not possess but which it rightfully should have possessed." *Id*. (footnote omitted). Relying on *Avon Products* and *May Department Stores*, more recent opinions simply speak of section 6601 of the Code as "reflect[ing] the 'use of money' principle." *Intel Corp. v. Comm'r* , 1998 WL 430032 at * 92 (Tax Ct. 1998); *see also, e.g., Sequa Corp. v. United States*, 1999 WL 628286 at * 3-4 (S.D.N.Y. 1999); *BankAmerica Corp. v. Comm'r*, 109 T.C. 1, 14 (1997).

Nonetheless, the case law, by and large, reveals that the "use of money" principle has little, if any, independent normative value. Viewed properly, it is nothing more than a tool of statutory construction, used to decide whether a specific statute authorizes the interest treatment sought, and not as an independent basis of recovery. Indeed, neither *Seeley Tube* nor *Kopper*s actually relied upon this concept as a basis for decision, but instead predicated their conclusions upon "extensive[] analy[sis] of the statutory scheme and the applicable portions of the statute." *Universal Film Exchange, Inc. v. United States*, 230 F. Supp. 518, 521 (S.D.N.Y. 1964); *see also Oxford Orphanage, Inc. v. United States*, 775 F.2d 570, 574 (4th Cir. 1985); *Universal Pictures, Inc. v. United States*, 237 F. Supp. 169, 175 (S.D.N.Y. 1964), *aff'd*, 345 F.2d 1002 (2d Cir. 1965) ("To characterize the[] holdings [in *Seeley Tube* and *Koppers*] as based on equitable doctrines is at best misdescriptive."). Much the same can be said of *Avon Products* and *May Department Stores*, where the concept still only played a background role. Accordingly, to the extent it retains any utility, the "use of money" principle may be wielded only in choosing among reasonably acceptable interpretations of an interest provision. It can neither support a recovery that clashes with the explicit provisions of the Code nor one that would, in effect, require the government to pay interest where no statutory authorization exists.

As broadly framed by plaintiff, the "use of money" concept inevitably would clash with more than a few Code provisions. Most commonly, Congress has determined that the United States need not pay interest on withheld taxes, even if they are later refunded, provided the refund is deemed timely. *See* §§ 6611(d), 6513(b)(3); Treas. Reg. § 301.6611-1(d). In this regard, the Code provides that "if an overpayment of tax . . . is refunded within 45 days after the last day prescribed for filing the return of such tax . . . no interest shall be allowed . . . on such overpayment." § 6611(e)(1); *see also MNOPF Trustees Ltd. v. United States*, 123 F.3d 1460, 1462 (Fed. Cir. 1997). Further, as mentioned above, no provision of the Code requires the United States to pay interest on estimated tax payments, at least until they actually result in an

overpayment. *See* §§ 6403, 6513(b), 6611(d); *see also Blair v. United States ex rel. Birkenstock*, 271 U.S. 348, 351-53 (1926). Although these are but the most common examples in which the Code does not provide for interest despite the government's "use" of a taxpayer's funds, they are by no means exclusive.[8] And, it bears repeating that, under the Treasury Regulations, interest is not owed on a credit elect. *See* Treas. Reg. § 301.6611-1(h)(2)(vii). Accordingly, any notion that some underlying "use of money" principle wontedly flows beneath the Code's interest provisions simply is unfounded. Sometimes the principle holds true, other times it does not. And because it is subject to this alternation, the principle offers a poor barometer as to how a given set of interest provisions ought to be interpreted, particularly in the case of overpayment interest being owed by the United States.

The latter point bears some additional emphasis. In invoking the "use of money" concept, plaintiff seemingly overlooks the fact that in *Seeley Tube* that concept was employed in support of an interpretation of a statute imposing interest on ***the taxpayer***. The Supreme Court, indeed, stressed this, stating that "[i]n the absence of a clear legislative expression to the contrary, the question of who should possess the right of use of the money owed the Government for the period it is owed must be answered in favor of the Government." *Seeley Tubes*, 338 U.S. at 566; *see also Koppers*, 348 U.S. at 268; *Dresser Indus. Inc. v. United States*, 238 F.3d 605, 612 (5th Cir. 2001). Nothing in this passage remotely suggests, conversely, that interest could be imposed upon the government "[i]n the absence of a clear legislative expression to the contrary." Indeed, any such notion seemingly runs headlong into the venerable concept of sovereign immunity. Emphasizing that immunity, the Supreme Court has made amply clear that interest may not be awarded against the United States without explicit statutory authorizations. *Library of Congress v. Shaw*, 478 U.S. 310, 315 (1986); *see also United States v. Alcoa Band of Tillamooks*, 341 U.S. 48, 49 (1951); *Usibelli Coal Mine v. United States*, 54 Fed. Cl. 373, 376 (2002). As logic would suggest, these same principles apply even where a claimant merely seeks to offset interest it claims is owed by the United States against interest that it owes to the United States. *See, e.g., Fed. Nat. Mortg. Ass'n v. United States*, 379 F.3d 1303, 1310-11 (Fed. Cir. 2004).

Recently, the Federal Circuit, in *Marsh & McLellan*, *supra*, highlighted the limited nature of the "use of money" concept. In that case, Marsh overpaid its 1985, 1986, 1987 and 1988 federal income taxes. When it filed its 1987 return, it elected to apply the overpayment to its 1988 tax liability, and, the following year, in its 1988 return, it elected to apply an overpayment

---

[8] *See also, e.g.*, 26 U.S.C. § 6413(a) (adjustments of certain employment taxes to be made by the IRS "without interest"); *id.* at § 6611(a)(2) (allowing the Secretary of the Treasury to stop paying interest on an overpayment as of "a date (to be determined by the Secretary) preceding the date of the refund check by not more than 30 days"); *id.* at § 6611(b)(3) (if a return is filed late, no interest will be paid for the period before the return was filed); *id.* at § 6611(e)(2) (if claim for refund filed and overpayment is refunded within 45 days of the claim, no interest allowed on such overpayment from the date the claim is filed to the date of the refund); *id.* at § 6611(e)(3) (limiting interest in the case of a refund or credit arising out of an IRS-initiated adjustment); *see generally*, 15 Mertens, at § 58:93.

to its 1989 tax liability. In 1994, the IRS determined that Marsh, in fact, had underpaid its 1987 and 1988 taxes. On March 15, 1989, the IRS applied Marsh's 1985 overpayment and a portion of its 1986 overpayment to its 1987 account and applied the remainder of the 1986 overpayment and the 1987 credit elect to Marsh's 1988 account. The IRS paid the taxpayer interest on its 1985 overpayment for the period ending on April 15, 1988, when its return for 1987 was due. The taxpayer claimed that it was entitled to additional interest for the period from April 15, 1988, to March 15, 1989, when its taxes for 1987 were actually assessed. A similar sequence of events led the taxpayer to claim additional interest on its 1986 overpayment. This court, however, held that, under section 6611 of the Code, and the regulations thereunder, the taxpayer was entitled to overpayment interest only until the original, unextended due dates of the taxes for the years to which the overpayments were credited. *See Marsh & McLellan Cos. v. United States*, 50 Fed. Cl. 140, 145-46 (2001).

On appeal, the taxpayer argued that the government had the use of its money and should pay interest. Although the Federal Circuit agreed that "the IRS had the use of Marsh's money represented by the credit elect overpayments," it affirmed this court's finding that Marsh was not entitled to any interest on those amounts. 302 F.3d at 379. The Federal Circuit opined that this result was dictated by section 6611(a) of the Code and the regulations thereunder, which expressly provided that interest should not be allowed on credit elect overpayments. It commented that "[j]ust as the taxpayer cannot get interest on the credit elect overpayment, the taxpayer cannot use the credit elect overpayment to increase the amount of interest that otherwise would be due on the 1985 and 1986 overpayments." *Id*. at 1380. The court made short shrift of the taxpayer's reliance on the "use of money" concept, as expressed in cases such as *Avon Products*, unequivocally stating:

> In any event, the "use of money" cases, on which Marsh so heavily relies, cannot contradict the statutory language as interpreted by the regulation. In general, the "use of money" principle is a tool of statutory construction that supports the payment of interest to compensate one party for the time the other party had the use of its money. *See, e.g., Manning v. Seeley Tube & Box* [supra]. The use of money principle has been recognized by the IRS generally, and has been applied by the statute and the regulations in specific situations. But Marsh has not called our attention to any case in which the use of money principle has been held to override statutory language requiring a contrary result. . . . The use of money principle does not trump the language of the relevant statute and Treasury regulations.

*Id*. at 1380-81. Based upon its review of *Seely Tube* and *Koppers*, the Federal Circuit further rejected the twin notions that, under the income tax laws, "there is symmetry in the payment of overpayment and underpayment interest," *id*. at 1379, and that "the tax code interest provisions are . . . to be interpreted, contrary to their language, to require the favorable netting of overpayments and underpayments," *id*. at 1381.

The conclusions reached by the Federal Circuit in *Marsh & McLellan*, *supra*, find solid support in a wealth of precedent, including no less than three Court of Claims decisions which have held that the "use of money" concept may be used to interpret a statute, but not to trump the explicit language thereof. *See Brown & Williamson, Ltd. v. United States*, 688 F.2d 747, 751 (Ct. Cl. 1982); *Martin-Marietta*, 418 F.2d at 508; *Gen. Elec. Co. v. United States*, 369 F.2d 724, 728 (Ct. Cl. 1966); *see also General Dynamics Corp. v. United States*, 562 F.2d 1201, 1204-05 (Ct. Cl. 1977). Numerous decisions likewise emphasize that a taxpayer must base its claim to interest not on this supposed equitable principle, but on a specific statutory provision.[9] Based on these many decisions, it is beyond peradventure that the "use of money" principle does not authorize this court to turn a blind eye to the plain meaning of sections 6402(b) and 6513(d) of the Code.[10] Rather, these decisions teach that the predicate for recovery here must be one or more provisions authorizing the crediting of the interest sought by plaintiff – and there is none. Certainly section 6601(a) does not provide that predicate, for once plaintiff's credit elects were applied to its subsequent tax liabilities, the deficiencies for the 1984 and 1985 tax years were increased – in the words of *Avon Products*, *supra*, the taxes for those years, which were already "due," became further "unpaid." Nothing subsequently altered that reality so as to reduce the interest owed on those deficiencies.[11]

---

[9] *See Gen. Elec. Co.*, 369 F.2d at 727 (rejecting the "use of money principle," stating "[t]he difficulty with this approach is that it has no footing in the statute"); *Universal Pictures Co. v. United States*, 345 F.2d 1002, 1006 (2d Cir. 1965) (rejecting principle in stating "[m]utuality of result is irrelevant; for interest to run against the Government, taxpayer must point to a specific statutory provision"); *see also Shriner's Hospitals for Crippled Children v. United States*, 862 F.2d 1561, 1563 (Fed. Cir. 1988) (stating "[t]ax and interest payments are creatures of statute").

[10] The case that comes closest to supporting plaintiff's basic position is *In re Vendell Healthcare, Inc.*, 222 B.R. 564 (Bankr. M.D. Tenn. 1998). In that case, however, the bankruptcy court applied the "use of money" concept without considering any of the relevant statutes or regulations governing credit elects and the treatment of estimated taxes, let alone the principle of sovereign immunity. If anything, this case merely illustrates the dangers of jumping to the false conclusion that there is a controlling "use of money" principle that somehow trumps the law Congress actually enacted. This court will not follow *Vendell* over that precipice.

[11] After *Avon*, the Commissioner issued two revenue rulings, Rev. Rul. 83-111, 1983-2 C.B. 245, and Rev. Rul. 83-112, 1983-2 C.B. 247, providing that estimated tax would not be considered paid, and a prior year's deficiency created by a transfer would not be considered unpaid, until the taxpayer filed a return electing to credit the reported prior year's overpayment against the next year's estimated tax. The Congress objected to this approach, enacting sections 413 and 414 of the Tax Reform Act of 1984, Pub. L. No. 98-369, 98 Stat. 494. These provisions required that the crediting of an overpayment from one year to the estimated tax of another year "shall be determined . . . without regard to Revenue Ruling 83-111 (and without regard to any other regulation, ruling, or decision reaching the same result . . . ); and . . . with full regard to the

Plaintiff inveighs that any failure to apply the "use of money" concept here would work an unmistakable injustice, giving the United States an interest windfall. But, "[f]airness, of course, is in many respects a comparative concept," *Hercules, Inc. v. United States*, 516 U.S. 417, 430 (1996), and when it comes to interest, "what is sauce for the goose is not necessarily sauce for the gander," *Universal Film*, 230 F. Supp. at 521. As Justice Brandeis observed in *United States v. North American Transportation & Trading Co.*, 253 U.S. 330, 336 (1920): "So rigorously is the rule applied that, in the adjustment of mutual claims between an individual and the government, the latter has been held entitled to interest on its credits although relieved from the payment of interest on the charges against it."[12] Indeed, in being required to pay interest on deficiencies while the government periodically possessed other of its funds, plaintiff is no worse off than other taxpayers, who cannot reduce the interest owed on their deficiencies because, in later years, the government had the interest-free use of withholding taxes or estimated tax payments. Like it or not, the Code does not envision such an overall balancing of interest. And note: to allow plaintiff to avoid paying interest on its deficiencies because of its credit elects would be to single it out for an economic benefit not conferred upon other corporate taxpayers that have actually overpaid their taxes and elected to credit their overpayments to a succeeding tax year, albeit without interest. To do that would be, in the words of *Seeley Tube*, "to place a premium on failure to conform diligently with the tax laws." 338 U.S. at 566. And, as in *Koppers*, 348 U.S. at 263, this court "find[s] nothing to justify a greater tax advantage to any taxpayer that underpays its correct tax, over one that pays such tax in full when due." *See also*

---

rules . . . before Revenue Ruling 83-111." *See also* H. Rep. No. 98-432, at 188-90 (1983). In response, the Commissioner of Internal Revenue revoked Rev. Rul. 83-111, *supra,* and replaced it with Rev. Rul. 84-58, 1984 C.B. 254, which held that for returns filed after December 31, 1983, when a taxpayer elects to have an income tax overpayment credited against the succeeding year's estimated tax, the IRS will apply overpayments arising on or before the due date of the return against the first installment payment of the succeeding year's estimated tax, unless the taxpayer requests that it be applied to a later installment. Later, Rev. Rul. 84-58 was modified by Rev. Rul. 88-98, 1988-2 C.B. 356, which provided that when an overpayment is credited from one year to an installment of the next year's estimated tax, interest on a subsequently determined deficiency runs from the due date of that installment. *See also* Rev. Rul. 99-40, 1999-2 C.B. 441; Tarr, *supra*, at II.C.6 n.245. While plaintiff asserts that defendant's arguments here are a rehash of the rulings overturned by Congress, that is not true, as those rulings sought to accelerate the application of the credit elects in the succeeding year to the ***earliest*** installment possible in the succeeding year. By comparison, here, defendant has applied the credit elects at the ***latest*** possible time. Plaintiff seeks to forestall the application of the credit elects to years later than its succeeding taxable year. Yet, it remains that nothing in section 413 and 414 of the 1984 Tax Reform Act, let alone section 6601 of the Code, anticipates that.

[12] *See also Boston Sand & Gravel Co. v. United States*, 278 U.S. 41, 49 (1928) (Holmes, J.) ("Even in the adjustment of mutual claims between an individual and the Government, while the latter is entitled to interest on its credits it is not liable for interest on the charges against it.").

*Dresser*, 238 F.3d at 612; *Fluor*, 126 F.3d at 1400. Thus, admitting, as Andrew Jackson once said, that "[t]he wisdom of man [has] never yet contrived a system of taxation that would operate with perfect equality," it is plaintiff's position, not defendant's, that is most discomfiting, at least within the framework of the Internal Revenue Code.

Even were plaintiff correct about the equities here, it would amount to nothing. As noted by the Supreme Court, "[w]e can only take the Code as we find it and give it as great an internal symmetry and consistency as its words permit." *United States v. Olympic Radio Television, Inc.*, 349 U.S. 232, 236 (1955). It most certainly is not for this court to "revise the language of the statute as interpreted by the Treasury to achieve what might be perceived to be better tax policy." *Marsh & McLellan*, 302 F.3d at 1381. Rather, this court must apply the language of the relevant interest provisions, as written. *See Comm'r v. Lundy*, 516 U.S. 235, 249 (1996) (courts are "bound by the language of the statute as it is written")*; Badaracco v. Comm'r*, 464 U.S. 386, 398 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effect susceptible of improvement."). As to interest, the Supreme Court has explicitly stated that "'courts lack the power to award interest against the United States on the basis of what they think is or is not sound policy." *Shaw*, 478 U.S. at 321 (quoting *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 663 (1947)). Indeed, were this court blithely to attempt to craft a rewrite of the interest provisions based upon "use of money" considerations, it undoubtedly would, given the complexity of the interest rules, quickly find itself "with apologies to Milton, [in] the tax equivalent of a Serbonian bog." *General Elec. Co. & Subs. v. United States*, 56 Fed. Cl. 488, 493 (2003), *aff'd*, 384 F.3d 1307 (Fed. Cir. 2004). There this court will not begin to tread.

Nor is plaintiff's case advanced by the interest netting provisions of section 6621(d) of the Code. Those provisions, which require the IRS to apply a zero net interest rate to certain overlapping periods of mutual indebtedness, were enacted as part of the IRS Restructuring and Reform Act of 1998 (the RRA), Pub L. No 105-206, 112 Stat. 685. The effective date provision of the RRA indicates that section 6621 applies only to interest accrued after the RRA's July 22, 1998, date of enactment. *See id.* at § 3301(c)(2), 112 Stat. at 741, *as amended by* Pub. L. No. 105-277, § 4002(d), 112 Stat. 2681, 2681-906 (1998); H.R. Conf. Rep. No. 105-599, at 257 (1998). The interest at issue predates this effective date. While an uncodified special rule allows a taxpayer to request that a zero net interest rate be applied to pre-July 22, 1998, periods of overlapping mutual indebtedness in some circumstances, that rule is triggered only where the taxpayer has filed a written request to apply the section with the Secretary of the Treasury no later than December 31, 1999. *Id.* at § 3301(c)(2), 112 Stat. 685, 741 (1998), *as amended by* Pub. L. No. 105-277, § 4002(d), 112 Stat. 2681, 2681-906 (1998); *see Fed. Nat. Mortg. Ass'n*, 379 F.3d at 1306; Rev. Proc. 99-43, 1999-2 C.B. 579. The record does not reveal that plaintiff

timely filed such a request and plaintiff does not assert otherwise.[13] Accordingly, section 6621(d) of the Code affords plaintiff no apotheosis.[14]

## III. CONCLUSION

The tableau is set and this court need go no further. The interest issue here is not an abstract question of theoretical fairness, but what Congress decided is appropriate treatment, as reflected in the language of the specific statutory provisions at issue. And, under that language, plaintiff loses. Based on the foregoing, this court **DENIES** plaintiff's motion for summary judgment and **GRANTS** defendant's cross-motion for summary judgment. The Clerk is directed to dismiss plaintiff's complaint.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge

---

[13] In seeking to apply interest netting principles, plaintiff cites the legislative history of the Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2085, the accompanying reports of which exhort the Treasury to implement "the most comprehensive netting procedures that are consistent with sound administrative practice." H.R. Conf. Rep. No. 99-841, at 785 (1986); *see also* S. Rep. No. 99-313, at 185 (1986). But, as the Eighth Circuit noted in rejecting another taxpayer's reliance on these same reports –

> The relevant statutes are, we think, quite clear, and we are not convinced that [this] litany of congressional reports amounts to anything like a mandate. Congress knows very well how to mandate something; it has not done so here. A statement in a report that a committee of Congress 'expects' an agency to do something does not have the force of law.

*Northern States Power*, 73 F.3d at 768*; see also Shannon v. United States*, 512 U.S. 573, 583 (1994) ("We are not aware of any case . . . in which we have given authoritative weight to a single passage of legislative history that is in no way anchored in the text of the statute.").

[14] Even were this section applicable here, it is doubtful that it would have any impact. Section 6621(d) applies only where "for any period, interest is payable under subchapter A [of Chapter 67 of the Code] and allowable under subchapter B [of Chapter 67 of the Code] on equivalent underpayments and overpayments" – a condition that does not appear to be met here. Moreover, there is no indication that this section was designed to overhaul either the Code provisions which define, with meticulous precision, when an overpayment arises, or those which allow the United States to retain funds for various periods of time without paying interest. This court, however, need not reach these issues.