ORIGINAL

# United States Court of Appeals for the Federal Circuit

06-5032

FLEETBOSTON FINANCIAL CORPORATION,

Plaintiff-Appellant,

FILED
JUL 2 2007
U.S. COURT OF FEDERAL CLAIMS

v.

UNITED STATES,

Defendant-Appellee.

## JUDGMENT

Appeal from the United States Court of Federal Claims
in 02-CV-879, Judge Francis M. Allegra.

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

AFFIRMED.

ENTERED BY ORDER OF THE COURT

DATED: APR 19 2007

Jan Horbaly, Clerk

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: Date: 7/2/07

ISSUED AS A MANDATE: JUL - 2 2007

U.S. Department of Justice

Tax Division

Please reply to: Appellate Section
P.O. Box 502
Washington, D.C. 20044

Facsimile No. (202) 514-8456
Telephone No. (202) 514-3361

FUTamami:cs
154-1914
2002104736

April 25, 2007

RECEIVED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT
APR 26 2007
JAN HORBALY
CLERK

VIA FEDEX

Jan Horbaly, Esquire
Clerk, U.S. Court of Appeals
for the Federal Circuit
National Courts Building
717 Madison Place, N.W.
Washington, D.C. 20439

Re: FleetBoston Financial v. United States
(Fed. Cir. - No. 06-5032)

Dear Mr. Horbaly:

In accordance with the April 19, 2007 opinion of your Court in the above-entitled case, we enclose herewith a verified bill of costs in the amount of $128.16 accompanied by a copy of the printer's bill, together with a supporting declaration. Please note that although the printer's bill lists the copying costs at 13 cents per page, we are seeking reimbursement of those costs at only 8 cents per page, pursuant to your internal guidelines.

A copy of this letter and a copy of the foregoing documents are being mailed this day, by FedEx, to counsel for the appellant. You are hereby requested to cause this bill of costs to be taxed as costs in your Court. This case is currently assigned to me and I may be reached at (202) 514-1882.

Any questions regarding this letter should be directed to Carol Silverberg of this office, who may be reached at (202) 514-5327.

Sincerely yours,

Francesca Tamami

FRANCESCA U. TAMAMI
*Attorney*
Appellate Section

Enclosures

cc: Matthew D. Schnall, Esq.
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110

BILL OF COSTS (File original and three copies with the Clerk within 14 days of judgment.)

Docket No(s): 06-5032 Caption: FleetBoston Financial v. United States

The Clerk is requested to tax the following costs against: Appellant

| ITEM | Number of copies | Number of pages | Actual cost | Allowable cost | Total billed | Total taxed |
|---|---|---|---|---|---|---|
| Docketing Fee (if paid in this court) | xxxxxx | xxxxxx | | | | |
| Table of Designated Materials (original) | xxxxxx | | | 6.00 | | |
| Table of Compilation of Designated Materials (copying and collating) | xxxxxx | | | 0.08 | | |
| Brief (original) | xxxxxx | | | 6.00 | | |
| Brief (cover and binding) | xxxxxx | xxxxxx | | 2.00 | | |
| Brief (copying and collating) | 18 | 89 | $.13 | 0.08 | $128.16 | $128.16 |
| Appendix (original-table of contents) | xxxxxx | | | 6.00 | | |
| Appendix (covers and binding) | xxxxxx | xxxxxx | | 2.00 | | |
| Appendix (copying and collating) | xxxxxx | | | 0.08 | | |
| Reply Brief (original) | xxxxxx | | | 6.00 | | |
| Reply Brief (covers and binding) | xxxxxx | xxxxxx | | 2.00 | | |
| Reply Brief (copying and collating) | xxxxxx | | | 0.08 | | |
| Other (describe): | | | | | | |
| GRAND TOTALS | | 89 | .13 | .08 | $128.16 | $128.16 |

FILED
U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT
APR 2 5 2007
JAN HORBALY
CLERK

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: [signature] Date: 7/2/07

7/2/07

City/County of Washington ) District/State of Columbia ) SS

I, Francesca U. Tamami, swear under penalty of perjury that the services for which costs are taxed were necessarily performed. Itemized statements of the costs incurred or invoices are attached. Copies of this bill were served on all parties. The certificate of service is attached.

Signature: [signature] Date: April 25, 2007 Attorney for: United States

2424676.1

MEMORANDUM

| Subject: | Date: |
|---|---|
| Cost of Duplicating the Brief for the United States | April 25, 2007 |
| From: | To: |
| Joseph E. Young<br>Executive Officer | Eileen J. O'Connor<br>Assistant Attorney General<br>Tax Division |

This is to certify that the cost for copies made in our Litigation Support Service Center, Patrick Henry Building, is 13 cents per page. Consequently, I certify that the cost of duplicating eighteen copies of the Brief for the United States in FleetBoston Financial Corp. v. United States, No. 06-5032, filed in the United States Court of Appeals for the Federal Circuit is as follows:

Brief for The United States:

1602 sheets duplicated at $.13 per copy = $208.26

Total: $208.26

IN THE UNITED STATES COURT OF APPEALS

FOR THE FEDERAL CIRCUIT

| | | |
|---|---|---|
| FLEETBOSTON FINANCIAL CORP. | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 06-5032 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

DECLARATION

FRANCESCA U. TAMAMI, counsel for the appellee, the United States, states as follows:

1. Rule 39(b) of the Federal Rules of Appellate Procedure provides that "[c]osts for or against the United States, its agency, or officer will be assessed under Rule 39(a) only if authorized by law." Under 28 U.S.C. § 2412(a)(1), "[e]xcept as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title [exclusive of attorneys' fees] may be awarded to a prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action." Under 29 U.S.C. § 1920(4), taxable costs include the costs of copying papers necessarily filed in the case.

2. I am an attorney employed in the Appellate Section of the Tax Division of the Department of Justice, and in that capacity I have knowledge of the cost of duplicating the appellee's brief filed and served in the United States Court of Appeals for the Federal Circuit in the above-entitled case. The total cost of duplicating said item was $208.26 as shown by the attached copy of the printer's bill, dated April 25, 2007, and the total cost is correct to the best of my knowledge and belief and has been necessarily incurred. We are seeking, however, only $128.16 in costs, reflecting your limit of allowable costs to 8 cents per page, pursuant to internal guidelines.

I declare under penalty of perjury pursuant to 28 U.S.C. Section 1746 that the foregoing is true and correct. Executed this 25th day of April, 2007, at Washington D.C.

Francesca Tamami

FRANCESCA U. TAMAMI
*Attorney*

CERTIFICATE OF SERVICE

It is hereby certified that service of the foregoing bill of costs has been made on counsel for the appellant on this 25th day of April, 2007, by mailing a copy thereof, via FedEx, properly addressed to him as follows:

Matthew D. Schnall, Esq.
Bingham McCutchen, LLP
150 Federal Street
Boston, MA 02110

Francesca U. Tamami

FRANCESCA U. TAMAMI
*Attorney*

# United States Court of Appeals for the Federal Circuit

06-5032

FLEETBOSTON FINANCIAL CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

John S. Brown, Bingham McCutchen LLP, of Boston, Massachusetts, argued for plaintiff-appellant. With him on the brief were George P. Mair, Donald-Bruce Abrams, and Matthew D. Schnall.

Francesca U. Tamami, Attorney, Tax Division, Appellate Section, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Eileen J. O'Connor, Assistant Attorney General, and Bruce R. Ellisen, Attorney. Of counsel was Ellen Page Delsole, Attorney.

Appealed from: United States Court of Federal Claims

Judge Francis M. Allegra

# United States Court of Appeals for the Federal Circuit

06-5032

FLEETBOSTON FINANCIAL CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

---

DECIDED: April 19, 2007

---

Before NEWMAN, LOURIE, and BRYSON, Circuit Judges.

Opinion for the court filed by BRYSON, Circuit Judge. NEWMAN, Circuit Judge, dissents.

BRYSON, Circuit Judge.

This case presents a difficult issue of corporate tax liability. FleetBoston Financial Corporation, through its predecessor BankBoston Corporation, overpaid its reported tax liability for tax years 1984 and 1985. Rather than seek refunds of the reported overpayments, FleetBoston elected to have the overpayment for each of those two years credited to its tax account for the immediately succeeding year. Several years later, the Internal Revenue Service ("IRS") audited FleetBoston's tax accounts and assessed deficiencies for 1984 and 1985. After FleetBoston eliminated the

deficiencies, the IRS assessed interest on the amount of the deficiencies for the intervening period. FleetBoston paid the assessment, but it challenged the amount of the interest and ultimately filed a refund claim for the disputed amount with the Court of Federal Claims. The primary question before that court and before us on appeal is whether FleetBoston must pay interest on the full extent of the deficiencies in its 1984 and 1985 tax accounts or, alternatively, whether interest on those deficiencies is suspended to the extent of FleetBoston's overpayments residing in other tax years' accounts on which the government did not pay interest to FleetBoston. The Court of Federal Claims concluded that FleetBoston must pay interest on the full extent of the deficiencies, and we agree.

I

In its tax return for 1984, which was filed on September 13, 1985, FleetBoston reported an overpayment of $665,945. Under the Internal Revenue Code and IRS regulations, a taxpayer that reports an overpayment of its income tax may request a refund or elect to have the reported overpayment applied to its estimated tax for the following year. 26 U.S.C. § 6402(b); 26 C.F.R. § 301.6402-3(a)(5). The subject of such an election is known as a "credit elect overpayment" or simply a "credit elect." On its 1984 tax return, FleetBoston instructed the IRS to apply FleetBoston's reported overpayment of $665,945 to its estimated tax for 1985.

During 1985, FleetBoston made three estimated-tax payments, totaling $33.1 million, toward its 1985 tax liability. That amount, together with the $665,945 credit elect from 1984, resulted in a $2.3 million overpayment of FleetBoston's reported tax

liability for 1985. On its tax return for 1985, which was filed on September 15, 1986, FleetBoston elected to credit that reported overpayment to its estimated tax for 1986.

In 1986, FleetBoston again overpaid its reported tax liability. Once again it elected to apply a portion of the reported overpayment as a credit against the following year's estimated-tax liability. The same pattern continued until 1991, when FleetBoston requested and received a refund of its reported overpayment for 1990.

Subsequent to FleetBoston's filing of its tax returns for 1984 and 1985, the IRS audited those returns and determined that, rather than having overpaid those years' taxes, FleetBoston actually had deficiencies for both tax years. After the parties reached agreement as to the amount of the deficiencies for those two years, FleetBoston applied net operating loss carrybacks from later years to eliminate the agreed-upon deficiencies. The parties, however, continued to dispute the amount of interest that FleetBoston should be required to pay on the deficiencies for 1984 and 1985. The IRS calculated underpayment interest for 1984 and 1985 as accruing on the portions of FleetBoston's 1984 and 1985 taxes that were not satisfied by funds in FleetBoston's tax account for each respective year. The IRS treated FleetBoston's 1984 reported overpayment as transferred into FleetBoston's 1985 tax account by virtue of the credit election and, for periods after that transfer, charged FleetBoston with interest on an additional 1984 deficiency in the amount of the credit elect. Similarly, the IRS treated FleetBoston's 1985 credit elect overpayment as transferred into FleetBoston's 1986 tax account, thereby increasing the 1985 deficiency on which underpayment interest was owed. The IRS did not view the additional overpayments

made by FleetBoston for tax years after 1985 as affecting the 1984 or 1985 deficiencies on which underpayment interest accrued.

FleetBoston took the position that the 1984 and 1985 deficiencies on which underpayment interest was due should not include the amounts of its credit elects for those years. FleetBoston noted that the funds represented by the credit elects were never needed to pay FleetBoston's estimated taxes during the pertinent period and that the government never had to pay overpayment interest on those funds over the years. Because the IRS was not deprived of the use of those funds between the time of their deposit with the IRS and the ultimate resolution of the deficiencies for 1984 and 1985, FleetBoston argued that it should not be required to pay interest on the portions of the deficiencies attributable to the credit elect overpayments taken in those years. Under the same theory, FleetBoston argued that the 1984 and 1985 deficiencies should be deemed reduced, for deficiency interest purposes, during time periods in which the IRS had interest-free use of overpayments that FleetBoston made on account of later years' taxes.

After the IRS rejected FleetBoston's refund request, FleetBoston filed a refund action in the Court of Federal Claims, where it renewed its arguments regarding the calculation of interest. The court rejected FleetBoston's claim. The court first noted that sections 6402(b) and 6513(d) of the Internal Revenue Code, 26 U.S.C. §§ 6402(b), 6513(d), provide that a credit elect is applied against a taxpayer's liability in the immediately succeeding tax year and only in that year. The court held that when FleetBoston's credit elects were applied to subsequent tax accounts, the deficiencies for 1984 and 1985 were increased, and interest on the increased portion of the deficiencies

began to accrue. The court ruled that the statutory authorization in section 6402(b) for crediting funds from one tax account to another resulted in increasing and decreasing deficiencies in different accounts. In light of that explicit statutory authorization, the court rejected FleetBoston's argument that the "use-of-money" principle underlying 26 U.S.C. § 6601(a), the underpayment interest provision of the Code, requires that overpayments be recredited to deficient accounts for purposes of calculating the underpayment interest due. The court reasoned that although the use-of-money principle is a useful tool of statutory construction, only a provision explicitly authorizing the crediting of funds back to the 1984 and 1985 tax accounts would allow the relief FleetBoston sought. The court found nothing in section 6601(a) or elsewhere in the Code to authorize such crediting. Finally, the court rejected FleetBoston's argument that it was entitled to "interest netting" under section 6621(d) of the Code, 26 U.S.C. § 6621(d). The court explained that FleetBoston was not eligible for that statutory remedy because it had not complied with the special requirements for relief under that provision. FleetBoston now appeals to this court.

II

The Internal Revenue Code renders a taxpayer liable for underpayment interest on "any amount of tax . . . [that] is not paid" until such time as the amount in question is paid. 26 U.S.C. § 6601(a); see Brookhurst, Inc. v. United States, 931 F.2d 554, 558 (9th Cir. 1991); Avon Prods., Inc. v. United States, 588 F.2d 342, 344 (2d Cir. 1978). FleetBoston argues that a tax for a particular year is "paid" for purposes of section 6601(a) not only by funds in the taxpayer's tax account for that year, but also by any

funds that the government holds interest-free in other tax accounts when those funds are not needed to satisfy the taxes associated with those accounts.

Contrary to FleetBoston's argument, the statutory and regulatory scheme governing the treatment of overpayments requires a narrower interpretation of the term "paid." The Internal Revenue Code does not adopt as a general principle the rule that an amount of tax due for one year is paid by funds assigned to other years' tax accounts. Instead, the Code contains specific crediting provisions that allow money in one year's tax account to be applied against another year's taxes in particular well-defined circumstances.

Of specific relevance here is section 6402(b) of the Code, 26 U.S.C. § 6402(b), which authorizes the Secretary of the Treasury to prescribe regulations "providing for the crediting [of any reported overpayment] against the estimated income tax" for the succeeding taxable year. The Treasury Regulations adopted pursuant to that statutory authority provide that when a taxpayer reports an overpayment and claims the overpayment as a credit against the taxpayer's estimated tax for the following taxable year, "such amount shall be applied as a payment on account of the estimated income tax for such year or the installments thereof." 26 C.F.R. § 301.6402-3(a)(5). That regulation accords with section 6513(d) of the Code, 26 U.S.C. § 6513(d), which provides that any overpayment claimed as a credit against estimated tax for the succeeding taxable year "shall be considered as a payment of the income tax for the succeeding taxable year (whether or not claimed as a credit in the return of estimated tax for such succeeding taxable year)." See also 26 C.F.R. §§ 301.6513-1(d), 301.6611-1(h)(2)(vii).

As these provisions make clear, the consequence of FleetBoston's election to have the reported overpayment for 1984 credited to its tax account for 1985 is that the reported overpayment was no longer available in FleetBoston's 1984 account to offset the deficiency for that year. The same is true of FleetBoston's election to credit its reported overpayment for 1985 to its tax account for 1986. The reported overpayments moved to FleetBoston's 1985 and 1986 accounts, even though they were not needed to pay FleetBoston's estimated taxes for those years. The regulations expressly contemplate that "the treatment of [a credit elect] as a payment of income tax for the succeeding taxable year [may] result[] in an overpayment for such succeeding taxable year," 26 C.F.R. § 301.6513-1(d), and the Code specifically allows that a payment can be made on account of a tax for which no liability exists, see 26 U.S.C. § 6401(c).

FleetBoston does not disagree that its credit elect overpayments moved out of its 1984 and 1985 tax accounts and into others; rather, it argues that the calculation of underpayment interest transcends tax accounts and looks to any overpayments that the IRS held interest-free, whatever tax account they were assigned to. Yet the existence of statutory provisions for crediting funds from one tax account to another indicates that a tax for a particular year is not paid by money generally held by the IRS, but rather by money assigned as payment of the tax for that year. The Code and regulations explicitly direct the Secretary of the Treasury to apply a credit elect overpayment of one year's reported tax as a payment of the next year's tax; nothing in the statutes or regulations suggests that a credit elect overpayment can be considered as never having moved to a different year's tax account for the purpose of calculating deficiency interest.

Compounding the difficulties with FleetBoston's account-transcendent approach to determining whether a tax has been paid for purposes of section 6601(a) is the way in which the Internal Revenue Code implements payment-netting provisions when netting is intended. Certain provisions of the Code implement the use-of-money principle in limited instances, but FleetBoston's broad interpretation of section 6601(a) would render those specific provisions superfluous.

In 1954, Congress enacted section 6601(a) in substantially its present form as part of the Internal Revenue Code of 1954. Pub. L. No. 83-591, § 6601(a), 68A Stat. 3, 817 (1954). Four years later, Congress enacted two provisions that implement the use-of-money principle in particular settings. Pub. L. No. 85-866, § 83(a), (b), 72 Stat. 1606, 1663–64 (1958). Congress enacted those provisions because differing interest rates on underpayments and overpayments, as well as other aspects of the Code, created situations in which "even though underpayments and overpayments offset each other, the Internal Revenue Service collects more interest than it pays or the taxpayer is entitled to more interest than he owes." S. Rep. No. 85-1983, at 99 (1958), reprinted in 1958 U.S.C.C.A.N. 4791, 4888. Congress sought to "eliminate these erratic differences of present law by terminating the interest both as to the overpayment and underpayment" in certain circumstances. Id. Accordingly, Congress enacted two complementary provisions, now codified at sections 6601(f) and 6611(b)(1) of the Internal Revenue Code, 26 U.S.C. §§ 6601(f), 6611(b)(1). One provision sets aside deficiency interest for certain periods; the other sets aside overpayment interest for the same periods. Together, they suspend interest in certain cases involving offsetting overpayments and underpayments, not including a case such as this one.

FleetBoston's interpretation of section 6601(a) as providing for interest suspension would make sections 6601(f) and 6611(b)(1) redundant. Rather than resort to those provisions, a taxpayer could simply assert that its overpayment for any tax year made an offsetting deficiency in a different account "paid" under section 6601(a). In perceiving a need to enact sections 6601(f) and 6611(b)(1), the 85th Congress presumably had a different understanding of what the 83rd Congress meant when it used the words "paid" and "not paid" to delineate when underpayment interest would accrue. The enactment of these specific interest-suspension provisions confirms that a given tax is paid or unpaid for purposes of section 6601(a) only by funds assigned to the taxpayer's account for that tax year.

III

FleetBoston responds to the government's statutory arguments by pointing to the text of section 6601(a). That provision imposes underpayment interest if an amount of tax "is not paid on or before the last date prescribed for payment" and imposes interest "from such last date to the date paid." FleetBoston notes that the portion of its tax liabilities for 1984 and 1985 corresponding to subsequent credit elections for those years was, in fact, paid "on or before the last date prescribed for payment" because the credit elects did not leave the 1984 and 1985 tax accounts until several months after the last date prescribed for payment of each year's tax. FleetBoston posits that under a literal interpretation of section 6601(a), interest would not accrue on a deficiency arising after the payment deadline because the amount of such a deficiency was paid on or before the prescribed date, even if the payment was later withdrawn to a deficient tax account because of a credit election.

FleetBoston does not directly contend that section 6601(a) should be accorded this interpretation. Rather, it argues that the only other principled interpretation of section 6601(a), and the correct interpretation, is one that imposes interest for the government's loss of the use of money to which it is entitled. FleetBoston contends that because the government has chosen the non-literal interpretation of section 6601(a), it must accept the logical limitations of that interpretation along with its benefits.

The flaw in that argument is that the two interpretations FleetBoston posits are not the only possible interpretations of section 6601(a). Under a third interpretation, adopted by the government and the trial court, section 6601(a) can be read as imposing interest for any period during which an amount of tax is both due and not paid, as the term "paid" is used in section 6601(a). We regard that interpretation as the most persuasive for two reasons. First, it gives meaning to the statutory term "paid" as referring to the funds in the taxpayer's account for the relevant tax year. That definition serves the government's interest in having tax payments reside in the proper tax account. Second, it avoids an obviously unintended result of the "literal" interpretation, under which interest would never run on a deficiency initially satisfied by funds in a particular tax account, even if those funds were promptly transferred out of that year's account after the due date for that year's tax had passed. Indeed, FleetBoston acknowledges that the "literal" reading of section 6601(a) is contrary to the well-established interpretation of section 6601(a).

The government's interpretation of section 6601(a) is also consistent with most of the authorities that FleetBoston relies upon to support its position. In <u>Avon Products, Inc. v. United States</u>, 588 F.2d 342 (2d Cir. 1978), the case on which FleetBoston

principally relies, the taxpayer on September 15, 1968, made a credit election for an apparent overpayment of taxes for tax year 1967. The credit elect was applied to the taxpayer's estimated-tax payment for 1968 that was due on that same day. When it was later determined that the taxpayer had a deficiency rather than an overpayment for 1967, the government sought interest on the amount of the deficiency that was created by the credit election. The narrow issue before the court was whether the government was entitled to interest during the three-month period between June 1968, when the taxpayer's 1967 tax was due, and September 1968, when the taxpayer made the credit election on its return and used the credit elect to pay its installment of 1968 estimated tax. The court held that interest did not run against the taxpayer for that three-month period, noting that the taxpayer's tax was "paid in full" from the due date, June 15, "until a deficiency was created on September 15." Id. at 344.

Although the Avon court stated that underpayment interest under section 6601(a) is not meant to be a "penalty," nothing in Avon reflects a broad adoption of the use-of-money principle. Instead, the Avon court simply held that section 6601(a) imposes interest on tax amounts that are "both due and unpaid," 588 F.2d at 344, and then looked to the funds in the taxpayer's 1967 tax account to determine when that year's tax became unpaid.

In revenue rulings issued in the wake of Avon, the IRS accepted that interest could be charged only when a tax was "both due and unpaid," and it stated that it would consider the credit elect portion of an earlier year's tax to be "unpaid" on the date that the credit elect became effective as a payment of the succeeding year's estimated tax. See Rev. Rul. 88-98, 1988-2 C.B. 356; Rev. Rul. 99-40, 1999-2 C.B. 441. Those

revenue rulings address situations in which the credit elect is needed to pay an estimated-tax liability for the year succeeding the overpayment year. They conclude that the credit elect applies to the following year's tax at whatever point in the following year it is needed to pay that year's tax. They do not, however, address the situation presented here, where a credit elect overpayment is not needed to pay an estimated-tax liability during the succeeding year but nonetheless is treated as a payment of the following year's estimated tax by operation of law. Importantly for present purposes, the revenue rulings adopt the "both due and unpaid" interpretation of section 6601(a), and they focus on determining when a credit elect overpayment leaves the relevant tax account. They do not adopt FleetBoston's broader interpretation of section 6601(a) by focusing, for purposes of interest computation, on whether the government had the use of offsetting taxpayer funds in any tax account.[1]

---

[1] Two other cases on which FleetBoston relies similarly deal with the narrow issue of when, in the year following the overpayment year, the credit elect becomes effective. May Department Stores v. United States, 36 Fed. Cl. 680 (1996), held that the IRS could not assess interest on a deficiency created by a credit election until the point in the following year when the credit elect was applied against the taxpayer's estimated tax. Segua Corp. v. United States, 99-1 U.S.T.C. (CCH) ¶ 50,379 (S.D.N.Y. June 8, 1999), held that an unneeded credit elect overpayment did not leave the first year's tax account before the deadline for payment of the next year's income tax. Neither of those cases decided whether the credit elect overpayment remained in the first year's tax account after the payment deadline for the succeeding year's tax. And neither had to decide whether the transfer of funds to a different account would render the tax "unpaid" for purposes of section 6601(a). Thus neither is authority for FleetBoston's broad use-of-money principle for calculating underpayment interest.

The dissent cites our discussion of Revenue Ruling 99-40 in Computervision Corp. v. United States, 445 F.3d 1355 (Fed. Cir. 2006). Computervision accurately represents that interest suspension under Revenue Ruling 99-40 applies when a taxpayer elects to credit an overpayment reported on its return for year one to year two, a deficiency is subsequently determined for year one, and the credit elect to year two is not needed to satisfy estimated tax installments for year two. As we stated in Computervision, "[u]nder these circumstances, interest is suspended relating to the

To be sure, a district court and a bankruptcy court have reached the result that FleetBoston urges upon us in this case. In Otis Spunkmeyer, Inc. v. United States, No. 02 Civ. 5773 (N.D. Cal. Aug. 10, 2004), the district court held that a taxpayer's election to credit overpayments of its reported taxes to the succeeding years did not increase the taxpayer's unpaid taxes for purposes of section 6601(a) when the credit elects were not needed to satisfy any tax liability. The court ruled that "the 'use of money principle' absolves [the taxpayer] of any obligation to pay interest" while the IRS "had in its possession" funds offsetting later-determined deficiencies. The bankruptcy court in In re Vendell Healthcare, Inc., 222 B.R. 562 (Bankr. M.D. Tenn. 1998), reached a similar conclusion on similar facts.

We find those cases unpersuasive because we conclude that Congress did not enact a broad use-of-money principle for purposes of computing underpayment interest, but instead enacted a specific set of rules (and authorized the Secretary of the Treasury to adopt additional regulations) governing the computation of underpayment interest in particular settings, such as in the case of credit elect overpayments. Invoking the broad use-of-money principle, those cases have in effect created a judicial exception to the governing statutory and regulatory scheme. They disregard both the account-specific meaning of the term "paid" in the Internal Revenue Code and the regulatory scheme under which a credit elect overpayment will be deemed to reside in the tax account for the succeeding year, even if it is not needed to pay estimated tax in that year. The use-

---

deficiency for year one." Id. at 1362. But Computervision does not discuss the period for which interest suspension will apply. On that point, Revenue Ruling 99-40 explains that interest suspension ends on "the date on which the overpayment is applied to the succeeding year's estimated taxes." As the government correctly argues here, that date is no later than the due date for year two's income tax.

of-money principle, which is merely a principle of statutory construction, cannot be used to trump the specific statutory scheme Congress has devised. See Marsh & McLennan Cos. v. United States, 302 F.3d 1369, 1380 (Fed. Cir. 2002).

Finally, FleetBoston appeals to equity. It argues, with some force, that the regime it envisions would be equitable, in that the government would not be entitled to interest on one tax account while holding excess funds in a different account, free of any obligation to pay interest to the taxpayer. The regime that FleetBoston describes, however, is not the regime created by the pertinent statutes and regulations. Those legal prescriptions, not general notions of rough equity, govern this highly technical tax question and require that we rule in favor of the government.

To construe section 6601(a) as a broad directive to follow general principles of equity would render the statute unmanageably open-ended. If fairness requires that underpayment interest on a tax deficiency cease running when the IRS has interest-free use of offsetting income-tax overpayments, the same principle of fairness would seem to require that underpayment interest cease running whenever the government has interest-free use of any of a taxpayer's funds. But the government can come into temporary possession of private funds in a wide variety of circumstances in which it does not pay the taxpayer interest during the time of its possession. FleetBoston does not argue that all such payments are available to suspend statutory underpayment interest. Yet FleetBoston offers no limit on its theory that would avoid the need to create a court-made distinction between income tax overpayments and other private funds held by government entities for purposes of underpayment-interest suspension.

In sum, we hold that the trial court correctly concluded that an amount of tax is "paid" within the meaning of section 6601(a) only by funds in the taxpayer's account for that tax year. In light of the fact that FleetBoston's overpayments of reported tax for 1984 and 1985 were applied to its tax accounts for subsequent years, underpayment interest under section 6601(a) was properly charged on the deficiencies created by FleetBoston's 1984 and 1985 credit elections. FleetBoston has not shown that any overpayments of estimated tax or income tax for later tax years ever resided in its 1984 and 1985 tax accounts; those overpayments therefore never suspended the underpayment interest due for 1984 and 1985.

There are plausible grounds for disagreement over precisely when FleetBoston's 1984 and 1985 credit elect overpayments were applied to its tax accounts for the following years. The regulations say that a credit elect overpayment shall be applied against the immediately succeeding year's estimated tax, but they do not say precisely when during that succeeding year the credit elects are applied to that year's tax account. The IRS decided in this case that because the succeeding years' income taxes were due on March 15, the credit elects were effective at the latest on the March 15 deadline for payment of the income taxes. We need not address whether each credit elect became effective at some earlier point within the succeeding year, because the government does not argue for an earlier date.[2] Thus, we sustain the trial court's

[2] The pertinent regulations, 26 C.F.R. §§ 301.6402-3(a)(5), 301.6611-1(h)(2)(vii), provide that a credit elect overpayment shall be applied as a payment of the succeeding year's "estimated tax," the last installment of which must be paid before the due date for the income tax—namely, by December 15 for calendar-year corporate taxpayers such as FleetBoston. Pub. L. No. 83-591, § 6154(b), 68A Stat. 3, 760 (1954); Pub. L. 100-203, § 10301(a), (b)(1), 101 Stat. 1330, 1330-424 to 1330-429 (1987). There is also some force to the position that the credit elect overpayment applies as an

decision that the interest attributable to the underpayments resulting from the credit elects for 1984 and 1985 was properly calculated for each taxable year from the March 15 due dates for the succeeding years' income taxes.

IV

Independent of its primary argument on appeal, FleetBoston argues that it is entitled to payment netting under section 6621(d) of the Code, 26 U.S.C. § 6621(d). That section provides for a net interest rate of zero during overlapping periods in which overpayment interest is allowable and underpayment interest is payable. The Court of Federal Claims correctly held that FleetBoston is not entitled to retroactive application of section 6621(d).

That section was enacted in 1998 and is ordinarily not given retroactive application. It can apply retroactively, however, if certain requirements are met. In particular, the taxpayer seeking retroactive application must "not later than December 31, 1999, request[] the Secretary of the Treasury to apply section 6621." Pub. L. No. 105-206, § 3301(c)(2), 112 Stat. 685, 741 (1998). As the Court of Federal Claims noted, there is no evidence that FleetBoston did so. Rather, FleetBoston argues that the IRS waived compliance with this requirement in two ways.

First, FleetBoston argues that an IRS Revenue Proceeding waives the writing requirement. It plainly does not. Rather, it simply provides that in certain circumstances

---

advance payment of the ensuing year's estimated tax upon the filing of the credit election. In light of the positions taken by the parties, however, it is not necessary for us to decide precisely when a payment that the taxpayer elects to apply against the next year's estimated tax is considered to leave the original year's tax account and operate as a payment of estimated tax for the succeeding year.

a letter or written statement making the request for retroactive application can be submitted in place of a specific form. Rev. Proc. 99-43, § 5.06, 1999-2 C.B. 579.

Second, FleetBoston points out that the government did not argue in the trial court that FleetBoston failed to comply with the retroactivity requirements. That is true, but it was FleetBoston that raised in the first instance its failure to comply with the formalities required for retroactive application of section 6621(d), arguing that those requirements should be waived. Mem. Supp. Pl.'s Mot. Partial Summ. J. & Opp'n Def.'s Mot. Summ. J. 29. The government's silence thus did not prejudice FleetBoston, and it should have been no surprise that the Court of Federal Claims would rest its decision on a weakness that FleetBoston raised in its own case.

AFFIRMED.

# United States Court of Appeals for the Federal Circuit

06-5032

FLEETBOSTON FINANCIAL CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

NEWMAN, Circuit Judge, dissenting.

In this case of income tax overpayment and underpayment, the question on appeal is the taxpayer's obligation to pay interest on underpaid income tax, as later determined by audit, when a tax overpayment for the same tax period and amount was already in the possession of the United States Treasury.

The question is not whether a taxpayer must pay interest to the United States on an underpayment of income tax, for the law is clear that interest is owed on tax underpayments. The question is whether this obligation can be set off against the taxpayer's overpayment of estimated tax for the same year. This court now holds that such a set-off, whether called "interest netting" or economic recognition of the government's use of the taxpayer's money, is not available to the taxpayer, at least when the taxpayer has designated the overpayment as a "credit-elect." This court thus

establishes a new rule that applies even when the overpayment was not needed and was not used to pay any tax obligation. This decision departs from the principles of several statutory provisions, and diverges from the rulings of other courts that have considered similar situations.

I

FleetBoston overpaid its reported income taxes for 1984 and 1985, and elected on its tax returns that the overpayments not be refunded, but be retained by the IRS and applied to the succeeding year's tax. This is called a "credit-elect overpayment." In the course of later audits, the IRS determined that there were deficiencies in the taxes reported by FleetBoston on its returns for 1984 and 1985. The IRS assessed the corrected tax and charged interest on the deficiencies, although FleetBoston's overpayments were more than adequate to pay the deficiencies, and such overpayments had not been used to pay taxes in the ensuing years, although available for that purpose due to the "credit-elect." Thus although the overpayments were in the possession of the IRS throughout the period for which the IRS levied interest, the IRS refused to credit the overpayments against the deficiencies, or to credit the value of the overpayments against the interest levied on the deficiencies.

FleetBoston seeks a refund of the interest that was levied, arguing that since the funds to pay the deficiencies were already in the possession of the IRS, interest on the deficiencies should not be charged, or should be deemed to be set off against the interest earned by the government on the overpayments. Rejecting both grounds of

relief, this court holds that because the overpayments were designated "credit-elect," neither the overpayments nor their earned interest could be credited to any deficiency found (upon later audit) for the year of the overpayment. It is noteworthy that in this case the elected credit was not used as a credit in ensuing years. Nonetheless, the court deems it irrelevant that this money was possessed by the government.

The authority on which my colleagues rely is Treas. Reg. 301.6402-3(a)(5),[1] which states that no interest is paid by the Treasury on overestimated tax payments that the taxpayer elects to leave with the Treasury for credit against the ensuing year's tax. Explaining their holding, my colleagues describe FleetBoston's estimated tax overpayments as residing in "other tax years' accounts," maj. op. at 2, apparently because of the "credit-elect," for it is undisputed that the overpayment was for the same

---

1 Treas. Reg. 301.6402-3(a)(5). A properly executed individual, fiduciary, or corporation original income tax return or an amended return (on 1040X or 1120X if applicable) shall constitute a claim for refund or credit within the meaning of section 6402 and section 6511 for the amount of the overpayment disclosed by such return (or amended return). For purposes of section 6511, such claim shall be considered as filed on the date on which such return (or amended return) is considered as filed, except that if the requirements of § 301.7502-1, relating to timely mailing treated as timely filing are met, the claim shall be considered to be filed on the date of the postmark stamped on the cover in which the return (or amended return) was mailed. A return or amended return shall constitute a claim for refund or credit if it contains a statement setting forth the amount determined as an overpayment and advising whether such amount shall be refunded to the taxpayer or shall be applied as a credit against the taxpayer's estimated income tax for the taxable year immediately succeeding the taxable year for which such return (or amended return) is filed. If the taxpayer indicates on its return (or amended return) that all or part of the overpayment shown by its return (or amended return) is to be applied to its estimated income tax for its succeeding taxable year, such indication shall constitute an election to so apply such overpayment, and no interest shall be allowed on such portion of the overpayment credited and such amount shall be applied as a payment on account of the estimated income tax for such year or the installments thereof.

tax year for which deficiency interest was levied.

FleetBoston argues that when Treas. Reg. 301.6402-3(a)(5) is read together with the "interest-netting" statutes, such that an overpayment covering the tax deficiency is possessed by the Treasury in the year of the deficiency, it is inappropriate to charge the taxpayer with deficiency interest for the period in which the funds were available to pay the deficiency. However, the court holds that the taxpayer must pay deficiency interest despite the fact that the taxpayer had overpaid its tax in an amount sufficient to pay the deficiency. This is contrary to tax principles, for the tax code includes provisions that require a balance between interest chargeable to the taxpayer and interest payable by the government:

> **26 U.S.C. §6601(f). Satisfaction by credits.** If any portion of a tax is satisfied by credit of an overpayment, then no interest shall be imposed under this section on the portion of the tax so satisfied for any period during which, if the credit had not been made, interest would have been allowable with respect to such overpayment. The preceding sentence shall not apply to the extent that section 6621(d) applies.
>
> **26 U.S.C. §6611(b). Period.** Such interest shall be allowed and paid as follows:
>
> > (1) **Credits.** In the case of a credit, from the date of the overpayment to the due date of the amount against which the credit is taken.
>
> **26 U.S.C. §6621(d). Elimination of Interest on Overlapping Periods of Tax Overpayments and Underpayments.** To the extent that, for any period, interest is payable under subchapter A and allowable under subchapter B on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.

Although the parties dispute whether formal requirements for §6621(d) were met by

FleetBoston, the government states that in any event §6621(d) does not apply when there was a credit-election; thus the government removes this section from the very situation it was intended to remedy. That cannot be the correct interpretation, for it is plainly stated in the legislative history that Congress intended to preclude charging the taxpayer with interest on underpayments while overpayments were in the possession of the IRS. The statutes reinforce FleetBoston's position that the assessment of interest was improper.

II

Other courts, differing from the panel majority, have held that when the overpayment was in the hands of the Treasury during the period of deficiency, the levy of interest on the deficiency is inappropriate. The court in Avon Products, Inc. v. United States, 588 F.2d 342 (2d Cir. 1978) stressed that the levy of interest is compensatory, not penal, and should be considered on this principle:

> During the three-month period in dispute, Avon had unquestionably paid enough indeed, $17,000 more than enough to satisfy its 1967 tax liability. Moreover, it is a clearly established principle that interest is not a penalty but is intended only to compensate the Government for delay in payment of a tax. Avon should not be required to pay interest for this period on a later-created deficiency, unless the Internal Revenue Code compels such an extraordinary result. We do not believe it does. [Citations omitted.]

Otis Spunkmeyer, Inc. v. United States, No. 02 Civ. 5773 (N.D. Cal. Aug. 10, 2004) at 21:

> Both the agency and the courts have embraced the "use of money" principle as a sort of touchstone, when a clear and unambiguous statutory directive is lacking, for determining when the IRS is entitled to collect interest from taxpayers. . . . Because the IRS had in its possession until October 12, 1999 (the date it issued a refund check to OSI),

overpayments that exceeded both the later-determined deficiencies, the "use of the money principle" absolves OSI of any obligation to pay interest before that date on the later-determined deficiencies for tax years 1993 and 1994.

May Department Stores v. United States, 36 Fed. Cl. 680 (1996):

> [C]onsistent with the "use of the money" principle followed in both Manning [v. Seeley Tube & Box Co., 338 U.S. 561 (1950)] and Avon Products, interest on deficiencies may be charged to compensate the government for funds which it did not possess but which it rightfully should have possessed. Before October 15 of each relevant tax year, not only had plaintiff paid the full sum for which it was liable, but its payment was not deficient in any respect. The IRS's application of the overpayment to the first installment of estimated tax for the following year, which had already been paid, cannot change the fact that the government had the use of the funds in issue from April 15 to October 15 and therefore suffered no underpayment. [Footnote omitted.]

Segua Corp. v. United States, 99-1 U.S.T.C. (CCH) ¶50,379 (S.D.N.Y. June 8, 1999):

> The Court finds persuasive the reasoning in May [Department Stores v. United States, 36 Fed. Cl. 680 (1996)] supporting that court's conclusion that under § 6601(a), the IRS may not assess interest on the amount of overpayments of tax credited to a succeeding year's liability were reduced to pay additional tax liability in the year of the overpayment.

In re Vendell Healthcare, Inc., 222 B.R. 564 (Bankr. M.D. Tenn. 1998):

> Because Vendell had no tax liability for the fiscal years of 1993 and 1994, the government was not deprived of use of Vendell's money since it was holding estimated tax payments that would reduce or satisfy the tax deficiencies. At no point, therefore, were the 1991 and 1992 taxes "due" and "unpaid" to the extent the IRS held the overpayments to reduce or satisfy the tax liabilities.

These cases support the principle that interest should not be assessed when the IRS already possesses the payment. The Federal Circuit recognized this principle in Computervision Corp. v. United States, 445 F.3d 1355, 1361-62 (Fed. Cir. 2006)

(discussing interest suspension under Revenue Ruling 99-40). For FleetBoston, it is not disputed that the government had FleetBoston's overpayment, and that despite the "credit-elect" this money was not allocated to any tax deficit in the years for which interest was charged to FleetBoston. FleetBoston stresses that it is not seeking to be paid interest on its overpayments; it is seeking not to be charged interest on its underpayments for the same period in which it made the overpayment. This is fair, and in accordance with statute and the weight of precedent. I thus must dissent from my colleagues' contrary holding.

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: Valerie A. Date: 7/2/07